WHISMAN, Appellant,

v.

GATOR INVESTMENT PROPERTIES, INC. et al., Appellees.

[Cite as *Whisman v. Gator Invest. Properties, Inc.*,
149 Ohio App.3d 225, 2002-Ohio-1850.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010431.

Decided April 12, 2002.

226

Arthur W. Harmon Jr., for appellant.

Rendigs, Fry, Kiely & Dennis, L.L.P., and Arthur E. Phelps Jr., for appellees.

MARK P. PAINTER, Presiding Judge.

{¶ 1} Appellant Brian Whisman sued Gator Investment Properties, Inc, Chris Leggett, Cheyonne Cincinnati Operating, Inc.,[1] d.b.a. Bourbon Street ("Bourbon Street"), and Daniel Nixon for injuries he received following a fight at a bar/dance club owned by Bourbon Street. (Bourbon Street comprised several bars within a shopping mall complex. There was a main entrance that led to four bar areas that offered different themes and music.) Gator Investment Properties, Inc., and Nixon were never properly served, and Nixon was subsequently dismissed without prejudice.

{¶ 2} Whisman claimed that Bourbon Street was negligent in permitting rioting in a tavern in violation of R.C. 4399.16 and in breaching its duty to warn him of or to protect him from fights. Whisman also alleged assault against Nixon, a patron of the bar, and Leggett, Bourbon Street's bartender. Bourbon Street and Leggett moved for summary judgment on all the claims. In his opposing memorandum, Whisman argued that his claim against Bourbon Street included liability under the doctrine of respondeat superior. The trial court, without opinion, granted summary judgment for Leggett and Bourbon Street on all of Whisman's claims.

{¶ 3} In Whisman's sole assignment of error, he now contends that the trial court erred in granting Bourbon Street and Leggett summary judgment. We reverse in part.

## I. The Parties' Versions of the Fight

{¶ 4} Whisman, an ex-employee of Bourbon Street, was a patron of After-shocks, a dance bar operated by Bourbon Street, on the night of the incident. (Whisman had worked for Bourbon Street for the preceding seven to eight months, in part as a security officer, and had been terminated two weeks before the incident.) Although only 19, Whisman had obtained from a bar employee a wristband indicating that he was old enough to buy alcoholic beverages. Whisman had consumed at least six beers at the bar that night and two at his home. While Whisman was dancing, Nixon, another patron, hit him over the head with a beer bottle. A fight ensued on the dance floor. Nixon and his friend shoved Whisman several times, Whisman hit Nixon in the face with his fist, and Nixon fell to the floor. At that time, according to Whisman, he was forced to defend himself against four other people, and "everybody" began fighting. When Whisman went to the aid of one of his friends, someone jumped on his back. Once that person was removed, two others attacked Whisman, and Whisman

---

1. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245.

returned their punches. According to Whisman, he was trying to help Bourbon Street security personnel. While Whisman was protecting himself from yet another attacker, Leggett quickly approached Whisman from behind the bar. Whisman recognized Leggett, but was unsure who he was because he was not dressed in Bourbon Street attire. Whisman put up his open hand, and "went to swing up," and Leggett grabbed his thumb. While bringing up Whisman's thumb, Leggett yelled, "Stop, stop." Whisman's open hand kept coming up, and Leggett pushed down on his thumb and broke it. During this incident, someone else continued to hit Whisman.

{¶ 5} Leggett described Whisman as very intoxicated and incoherent. Some time after the melee, Leggett saw Whisman's broken thumb.

{¶ 6} Whisman testified that four or five on-duty police officers would typically be stationed at the main entrance of the entertainment complex. Lead security people were assigned to particular rooms, but could also wander among the bars. There were at least two security personnel in Aftershock on the night of the incident, clad in purple shirts with "Bourbon Street" on the left shoulder and "Staff" on the back.

{¶ 7} In his affidavit, Whisman stated that he turned to defend himself when he saw a large person approaching him at a fast pace. He stated that while he was bringing his hand up, that person grabbed his thumb and began bending it back. According to Whisman, he was under control at that time, recognized the person as a Bourbon Street bartender, and told the bartender that he was "Bourbon Street," a code word to gain his release. At that point the bartender exerted more pressure and snapped his thumb. According to Whisman, he was making no aggressive moves when Leggett broke his thumb.

{¶ 8} Whisman also stated in his affidavit that he had never received a warning that fights were regular occurrences at the bar and that patrons had been seriously injured as a result.

{¶ 9} According to the affidavit of Ryan Everman, a Bourbon Street manager, Everman heard Leggett telling others how he had broken Whisman's thumb using a military maneuver to bring him under control, and he observed Leggett demonstrating the maneuver. Everman also stated (1) that fights occurred two or three times every weekend in the bar areas of Bourbon Street, (2) that he had observed people seriously hurt as a result of the fights, (3) that management made little effort to increase the presence of security or police at the bar, (4) that Bourbon Street did not employ security guards, (5) that police were not allowed inside the bar areas until a disturbance occurred, and (6) that employees, without training, were instructed to break up fights.

{¶ 10} According to the affidavit of Garon James Wuest, an employee of Bourbon Street at the time of the incident, he heard Leggett tell Everman that he had broken "that guy's thumb," and he noticed that Leggett, who was wearing street clothes, had blood on his shirt. He stated also that during the time that he had worked for Bourbon Street, (1) two or three fights would occur each weekend, (2) he observed that people were injured as a result, and (3) he was not aware of Bourbon Street's taking measures to terminate or decrease the fights. Both Wuest and Everman averred that Whisman did not appear intoxicated on the night of the incident.

{¶ 11} In Leggett's version of events, Whisman was on the back of a security person, swinging at people, while the security person wrestled with Nixon. Leggett gave the signal from the bar to alert security about the fight. He then left the bar to help the security person wrestling with Nixon. He pulled Whisman off the security person by grabbing his arms from the back and pulling him back. When Leggett told Whisman to stop, Whisman told Leggett that he was security. Because two other men were coming toward him in a threatening manner, Leggett let Whisman go. Leggett denied pulling or breaking Whisman's thumb.

{¶ 12} According to Leggett, other employees would help the full-time security staff, identified by purple shirts, to break up fights at their discretion. Bourbon Street managers would hold security meetings and tell everyone how to maintain security. Leggett had intervened in fights more than ten times. He would restrain a person by grabbing him and taking him out front to the police officers. At least one of the managers knew that other employees would assist security personnel. He stated that fights occurred quite often at the bar.

## II. Summary–Judgment Standard of Review

{¶ 13} We review the grant of summary judgment de novo, using the same standard that the trial court applied.[2] Under Civ.R. 56, summary judgment was appropriate for Leggett and Bourbon Street if (1) there was no genuine issue of material fact, (2) Leggett and Bourbon Street were entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the Whisman, reasonable minds could only have reached a conclusion adverse to him.[3] Leggett and Bourbon Street, as the moving parties, bore "the initial burden of demonstrating that there [were] no genuine issues of material fact concerning an

---

2. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245.

3. See *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204, citing *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.

essential element of [Whisman's] case."[4] If Leggett and Bourbon Street met that burden, Whisman then had to come forward with specific facts showing a genuine issue of material fact.[5]

{¶ 14} Since Whisman has failed to specifically challenge on appeal the trial court's grant of summary judgment on his claim under R.C. 4399.16, that issue is not before us.

### III. Summary Judgment Was Improperly Granted on Claims of Intentional Tort and Respondeat Superior

#### A. Self–Defense: An Unpleaded Affirmative Defense

{¶ 15} In Whisman's first challenge to the trial court's granting of summary judgment, he argues that a genuine issue of material fact existed as to whether Leggett acted in self-defense. The first time Leggett raised the affirmative defense was in his postanswer summary judgment motion. In his motion, he argued that he should have been relieved from liability for any tortious conduct because he was not the aggressor in the incident with Whisman. Leggett relied on Whisman's deposition testimony that Whisman had swung his open hand when Leggett approached him.

{¶ 16} Self-defense in a willful-tort action is an affirmative defense that the proponent must plead and prove.[6] "Affirmative defenses other [than] those listed in Civ.R. 12(B) are waived if not raised in the pleadings or in an amendment to the pleadings."[7]

#### B. A Prejudicial Civ.R. 15(B) Amendment

{¶ 17} Under Civ.R. 15(B), issues tried by express or implied consent of the parties are to be tried as if they had been raised in the pleadings. The Ohio Supreme Court has held that an implied amendment under Civ.R. 15(B) is impermissible where it would result in substantial prejudice to a party.[8] Factors

---

4. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264, 273.

5. See *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

6. See *Skinner v. Brooks* (1944), 74 Ohio App. 288, 29 O.O. 437, 58 N.E.2d 697; 4 Anderson's Ohio Civil Practice (1996) 403, Section 153.08. See, also, *Mitchel v. Borton* (1990), 70 Ohio App.3d 141, 590 N.E.2d 832 (holding that the list of affirmative defenses in Civ.R. 8[C] is not exhaustive).

7. *Jim's Steak House, Inc. v. Cleveland* (1998), 81 Ohio St.3d 18, 20, 688 N.E.2d 506, 508.

8. *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 5 OBR 99, 448 N.E.2d 1159, paragraph one of the syllabus.

to be considered in determining whether an implied consent has occurred are (1) whether the "[parties] recognized that an unpleaded issue entered the case," (2) whether the "opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were retried on a different theory," and (3) "whether the witnesses were subjected to extensive cross-examination on the issue."[9]

{¶ 18} The introduction of evidence on an unpleaded issue without objection is insufficient to establish implied consent under Civ.R. 15(B); "it must appear that the parties understood the evidence was aimed at the unpleaded issue."[10] This court has held that there is an implied amendment of an answer under Civ.R. 15(B) when an affirmative defense is fully litigated by the parties without objection at a summary-judgment hearing.[11] In this case, there was no hearing and neither party raised the issue of amendment. But the only way that the trial court could have concluded that summary judgment was proper for Leggett was to conclude that Leggett had acted in self-defense, thus implicitly amending Leggett's answer to include the affirmative defense.

{¶ 19} We conclude that under the facts of this case, the trial court's implied amendment under Civ.R. 15(B) was improper and substantially prejudiced Whisman. The issue of self-defense was neither properly raised nor adequately argued. Leggett denied injuring Whisman. He claimed in his deposition and in his affidavit accompanying his reply memorandum that he had not grabbed Whisman's thumb and that he had not broken it. Leggett claimed that he grabbed Whisman's arm from the back and pulled him off a Bourbon Street employee. Leggett, in fact, never presented evidence of self-defense, *i.e.*, evidence to justify an assault on Whisman. Leggett's defense was that he had never committed an intentional tort against Whisman. Under the circumstances, we hold that Whisman was not afforded fair opportunity to address self-defense or to offer additional evidence on the unpleaded issue. (Because Leggett claimed

---

9. Id.

10. Id., paragraph two of the syllabus.

11. See *Branstetter v. State Auto. Mut. Ins. Co.* (Aug. 20, 1986), Hamilton App. No. C–860020. See, also, *Parker Fin. v. Matthews* (Feb. 3, 1999), Adams App. No. 97CA652, 1999 WL 74686. But, see, *Mossa v. W. Credit Union, Inc.* (1992), 84 Ohio App.3d 177, 616 N.E.2d 571 (holding that summary judgment is an improper stage to raise affirmative defense); *Swayne v. Roof* (Dec. 18, 2001), Scioto App. No. 01CA2766, 2001 WL 1682943 (holding that where no hearing is had and affirmative defense is first raised in a memorandum opposing summary judgment, there is no opportunity to consent under Civ.R. 15[B] ); *Miller v. Lima* (Aug. 23, 1985), Allen App. No. 1–83–57, 1985 WL 7385 (holding that Civ.R. 15[B] contemplates only issues raised at trial).

that he had not broken Whisman's thumb, we question the ability even to plead self-defense.)

{¶ 20} Without the affirmative defense, the trial court had before it conflicting evidence. Whisman's evidence indicated that Leggett had intentionally broken his thumb while acting in the course of his employment when Whisman raised his open hand at Leggett's approach. Leggett's evidence indicated that he had merely pulled Whisman off the back of another employee without touching his thumb or causing any injury. Obviously, there existed a genuine issue of material fact whether Leggett was the person who had injured Whisman. Consequently, a genuine issue of material fact also existed whether Bourbon Street was liable for the tort of Leggett under the doctrine of respondeat superior. Thus, we conclude that the trial court improperly granted summary judgment on these claims. But this should not be construed to preclude Leggett or Bourbon Street from amending their answers to include a self-defense claim before trial if the trial court so allows. If an amendment is allowed, the jury can then determine whether Leggett acted in self-defense and whether the force he used was excessive. As the case currently stands, however, Leggett is denying that he injured Whisman and is not asserting that he acted in self-defense in doing so.

### IV. Summary Judgment Was Properly Granted on Negligence Claim

{¶ 21} We conclude, however, that summary judgment was proper on Whisman's negligence claim against Bourbon Street. Whisman asserted a common-law negligence claim against Bourbon Street, claiming that it had breached its duty to exercise reasonable care to protect him from and warn him about reasonably foreseeable injuries by the acts of other patrons.

{¶ 22} Whisman had the burden to demonstrate that Bourbon Street owed him a duty, that it breached the duty, and that he suffered damages proximately resulting from that breach.[12] "If, in response to a properly supported motion, the plaintiff fails to meet its evidentiary burden of setting forth facts from which reasonable minds could find all three elements, then the defendant is entitled to summary judgment as a matter of law."[13]

■■ {¶ 23} The first element Whisman had to demonstrate was that Bourbon Street owed him a duty of reasonable care. "A business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the

---

12. See *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616.

13. *Williams v. 312 Walnut Ltd. Partnership* (Dec. 31, 1996), Hamilton App. No. C–960368, 1996 WL 741982.

business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner."[14] In other words, a duty exists where a risk is reasonably foreseeable.[15] Accordingly, the foreseeability of a criminal act depends on the knowledge of the business owner.

{¶ 24} Ohio courts are split on the appropriate test for foreseeability.[16] The totality-of-the-circumstances test takes into consideration not only past experiences but also "such factors as the location of the business and the character of the business to determine whether the danger was foreseeable."[17] Under this test, the totality of the circumstances must be "somewhat overwhelming" to result in a duty to protect third parties against criminal acts of others.[18]

{¶ 25} Under the other test, "the occurrence of prior similar acts suggests that the danger was foreseeable."[19] This court has adopted the prior-similar-acts test.[20] Thus, to determine whether the attack on Whisman by Nixon was foreseeable, we must determine whether Whisman demonstrated that Bourbon Street could have anticipated the attack because of prior similar activities on its premises.

{¶ 26} The evidence before us is that fights occurred at Bourbon Street frequently from April 1997 through December 1999 and that patrons had been seriously injured as a result. This evidence was not contested. Thus, we conclude that because it was foreseeable to Bourbon Street, based on prior activities on its premises, that Whisman could be injured in a fight, it owed a duty to Whisman to protect him.

{¶ 27} The record in this case, however, demonstrates that there was no breach of that duty. "Once the existence of a duty is found, a defendant must exercise that degree of care which an ordinarily careful and prudent person

14. *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 652 N.E.2d 702, syllabus.

15. See *Menifee v. Ohio Welding Prod., Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707, 710.

16. See *Heys v. Blevins* (June 13, 1997), Montgomery App. No. 16291, 1997 WL 335564.

17. Id., citing *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 193, 583 N.E.2d 1071, 1075.

18. Id. at 193–194, 583 N.E.2d at 1075.

19. *Heys v. Blevins*, supra.

20. See *Montgomery v. Young Men's Christian Assn.* (1987), 40 Ohio App.3d 56, 531 N.E.2d 731; *Townsley v. Cincinnati Gardens, Inc.* (1974), 39 Ohio App.2d 5, 68 O.O.2d 72, 314 N.E.2d 409; *Settles v. BO–JO Corp.* (Aug. 10, 1994), Hamilton App. No. C–930533, 1994 WL 416429.

would exercise under the same or similar circumstances."[21] But a business is not an insurer of its invitees' safety.[22] Thus, the duty owed is one of reasonable care "to protect business invitees from foreseeable dangers."[23]

{¶ 28} Whisman contends that Bourbon Street's failure to warn him and to supply adequate security constituted a breach of its duty. The evidence demonstrates that Whisman worked at Bourbon Street until two weeks before the incident as a security employee. Bourbon Street employed a full-time security staff supervised by an individual. Security employees wore purple shirts to identify them as such. Lead security wore black shirts. Four or five uniformed policemen were stationed at the entrance to Bourbon Street and were allowed into the facility when a fight occurred. Five security people, including two lead security personnel, were assigned to each room, but were allowed to walk the area. In the area where this incident occurred, there were more than two security personnel. Bourbon Street held security meetings where employees were instructed on how to maintain security. But untrained employees would also break up fights. When a fight occurred, the bartender flashed a light that called security personnel into the area.

{¶ 29} The night of the incident was calm. There were a "decent" number of patrons. Nixon, "out of the blue," walked up behind Whisman and hit him in the head with a beer bottle. The record indicates that Whisman failed to raise a genuine issue of material fact as to whether Bourbon Street failed to take reasonable steps to protect its patrons. Further, under the facts of this case, where Whisman worked as a security employee for the seven months preceding the incident, there was no genuine issue of material fact whether Bourbon Street had a duty to warn him of any danger.

### V. Primary Assumption of the Risk

{¶ 30} Bourbon Street would have this court apply the judicially created doctrine of primary assumption of the risk to hold that Bourbon Street owed no duty to Whisman based on the fact that Whisman swung his hand at Leggett. "Primary assumption of the risk is a defense of extraordinary strength * * * [and] differs conceptually from the affirmative defenses that are typically interposed in a negligence case * * * because a defendant who asserts this

---

21. *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505.

22. See *Wilson v. PNC Bank, N.A.* (May 5, 2000), Hamilton App. No. C–990727, 2000 WL 543813.

23. Id.

defense asserts that no duty whatsoever is owed to the plaintiff."[24] The doctrine is generally applied in recreational or sporting activities, and is based on the premise that a participant in certain activities assumes the risk that he or she will be injured.[25] It is, however, "only those risks directly associated with the "only those risks directly associated with the activity in question [that] are within the scope of primary assumption of [the] risk."[26] Primary assumption of the risk relieves a recreation provider from any duty to eliminate the risks that are inherent in the activity or sport because such risks cannot be eliminated.[27]

 {¶ 31} We are unwilling to conclude as a matter of law that a bar has no duty to a patron for injuries allegedly received from the bar's employee when, during a brawl on the bar's premises, the patron swings his open hand at a person, later identified as the bar's employee, coming toward him. Use of primary assumption of the risk in that situation would preclude a bar from being found negligent anytime a patron defends himself from any perceived danger that occurs on its premises. Primary assumption of the risk is applicable to activities that are inherently dangerous. While Bourbon Street might claim that Whisman assumed the risk of injuries if it operated a boxing ring and Whisman was injured while participating in a boxing match, we cannot accept that injury by another is inherent in dancing at a bar. Such a risk is abnormal, not inherent in the activity "sponsored" by Bourbon Street.

## VI. Conclusion

{¶ 32} Accordingly, we conclude that the trial court improperly granted summary judgment to Bourbon Street and Leggett on Whisman's intentional-tort and respondeat-superior claims but properly granted summary judgment for Leggett and Bourbon Street on Whisman's negligence claim. We therefore affirm the trial court's judgment in part, reverse in part, and remand for further proceedings consistent with this opinion and the law.

> Judgment affirmed in part,
> reversed in part
> and cause remanded.

HILDEBRANDT and SUNDERMANN, JJ., concur.

---

24. *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 431, 659 N.E.2d 1232, 1236.

25. See *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699.

26. *Gallagher,* 74 Ohio St.3d at 432, 659 N.E.2d at 1237.

27. See *Sproles v. Simpson Fence Co.* (1994), 99 Ohio App.3d 72, 78, 649 N.E.2d 1297, 1300.