OPINION
{¶ 1} Plaintiffs-appellants, Andrea and Jeffrey Brennan, appeal a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Daniel and Donald Schappacher.
 {¶ 2} On July 4, 2005, the Schappacher family held a picnic on their family farm. Andrea and Jeffrey Brennan, along with their daughter, Ella, were among the guests. The *Page 2 
Brennans arrived around 6:00 p.m. Like their previous Fourth of July parties, the Schappachers offered a hayride for the guests and their children as part of the festivities. Daniel Schappacher had cleared a route over the farmland two days before the party, creating a route for a hayride that would last approximately 15 minutes. Around 7:30 p.m. guests loaded onto two hay wagons attached to separate tractors. Between 20 to 25 people rode on each wagon.
 {¶ 3} Daniel drove the lead tractor. His 14-year-old son, Donald, drove the second, smaller tractor; a John Deere 770 owned by the Schappachers. According to the record, Donald was an experienced tractor-driver, having operated tractors since the age of six. The Brennans and their daughter were passengers on the second wagon driven by Donald. The route required both tractors to drive down a grade on the Schappachers' property. Daniel's tractor and wagon navigated the grade with no difficulty. However, after Donald's tractor crested the rise in the field, it began to dramatically increase in speed. Feeling that the wagon was going out-of-control, the Brennans believed they needed to get off the wagon to avoid injury. As a result, they either jumped or fell off the wagon.
 {¶ 4} Donald's wagon continued to careen down the hill. Looking back from his tractor, Daniel observed Donald struggling with the tractor as it proceeded down the hill. Daniel noticed the tires were not moving when Donald engaged the brakes, yet the tractor continued to pick up speed. Donald testified in his deposition that the tractor inexplicably lost traction. He tapped the brakes, but the vehicle did not slow. He then attempted to lock the brakes, yet the tractor continued. As the tractor continued to slide, Donald finally cut the wheel to the right, jackknifing the tractor and wagon. The sudden stop caused the remaining passengers to be thrown from the wagon.
 {¶ 5} Andrea Brennan suffered an injury to her ankle. On July 13, 2007, the Brennans commenced the instant action against the Schappachers, seeking damages for her *Page 3 
injuries and loss of consortium. Following discovery, the Schappachers moved for summary judgment. The trial court granted summary judgment in favor of the Schappachers, finding that the hayride was a recreational activity and the Brennans' claims were barred by the doctrine of primary assumption of the risk. The trial court also held that the Brennans could not establish the cause of the accident and that Daniel did not negligently entrust the operation of the hayride to Donald. The Brennans timely appeal, raising two assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTS IN RENDERING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES, FINDING THAT THE APPELLANTS' CLAIMS ARE BARRED BY THE DOCTRINE OF PRIMARY ASSUMPTION OF THE RISK."
 {¶ 8} In their first assignment of error, the Brennans argue the trial court erred in granting summary judgment to the Schappachers based upon the defense of primary assumption of the risk. The Brennans urge that the particular risk that led to Andrea's injury is not inherent to a hayride.
 {¶ 9} On appeal, a trial court's decision granting summary judgment is reviewed de novo. Burgess v. Tackas (1998),125 Ohio App.3d 294, 296. Summary judgment is proper when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. See Civ. R. 56(C); see, also, Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. The movant bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. Once this burden is met, the nonmovant has a reciprocal *Page 4 
burden to set forth specific facts showing a genuine issue for trial. Id.
 {¶ 10} Negligence claims require a showing of a duty owed; a breach of that duty; and an injury proximately caused by the breach.Wallace v. Ohio Dept. of Commerce, 96 Ohio St.3d 266,2002-Ohio-4210, ¶ 22.
 {¶ 11} The parties agree that the Brennans were social guests of the Schappachers. "A host who invites a social guest to his premises owes the guest the duty (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." Scheibel v.Lipton (1951), 156 Ohio St. 308, paragraph 3 of the syllabus.
 {¶ 12} However, "[w]here individuals engage in recreational * * * activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either `reckless' or `intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d."Marchetti v. Kalish (1990), 53 Ohio St.3d 95, syllabus;Gentry v. Craycraft, 101 Ohio St.3d 141, 2004-Ohio-379, ¶ 6.
 {¶ 13} Primary assumption of the risk is a question of law. The effect of raising primary assumption of the risk as a defense, if successful, "means that the duty element of negligence is not established as a matter of law, [preventing] the plaintiff from even making a prima facie case." Gallagher v. Cleveland Browns FootballCo., 74 Ohio St.3d 427, 431-432, 1996-Ohio-320. "Primary assumption of the risk relieves a recreation provider from any duty to eliminate the risks that are inherent in the activity * * * because such risks cannot be eliminated." Whisman v. Gator Invest.Properties, Inc., 149 Ohio App.3d 225, 236, 2002-Ohio-1850. *Page 5 
 {¶ 14} Here, the trial court found that a hayride is a recreational activity. Moreover, the trial court held "that the doctrine of Primary assumption of the Risk is applicable to the facts of this case. The Plaintiff was engaged in a recreational activity. A reasonable jury could only find that whoever would decide to take a hayride on a piece of farm equipment across farm fields would understand there is some risk involved in the activity. The wagon is pulled across hill and dale over uneven terrain that might contain holes and ruts that are usually associated with farm land. Mishaps occur when one is engaged with moving farm machinery and equipment across uneven terrain. It is not necessary that the actual mode of mishap be known or appreciated, it is enough to realize that there is some element of risk associated with the activity."
 {¶ 15} The trial court relied upon Taylor v. Mathys, Union App. No. 14-04-32, 2005-Ohio-150. Taylor involved the use of an all terrain vehicle in wintery conditions. In December of 2004, Taylor, Mathys and a mutual friend were using the ATV to pull a sled through the fields behind Mathys' home. Id. at ¶ 3. The injury occurred while Mathys drove the ATV, Taylor rode on the back of ATV, and their friend rode on the sled. Id. at ¶ 4. While driving over a small snow drift, Taylor's leg got caught in the ATV's tire, resulting in a severely broken leg. Id. Taylor sued Mathys, alleging Mathys negligently and/or recklessly operated the ATV. Id. at ¶ 5. The Third District Court of Appeals affirmed an award of summary judgment in favor of Mathys, finding that assumption of the risk prevented Taylor from recovering on his negligence cause of action. Id. at ¶ 11.
 {¶ 16} After reviewing the record, we disagree with the applicability of Taylor to the case at bar. The controlling issue in the instant matter involves the inherent or ordinary risks associated with an activity. The focus of the Third District's analysis in Taylor is upon the specific conduct of the defendant, not the risks associated with ATV use in general. In fact, the Third District in Taylor never addressed or engaged in any discussion of inherent risk. *Page 6 
 {¶ 17} In Gallagher, 74 Ohio St.3d 427, the Ohio Supreme Court further elaborated upon the rule it declared inMarchetti, holding that "only those risks directly associated with the activity in question are within the scope of primary assumption of risk * * *." Id. at 432, citing Cincinnati BaseballClub Co. v. Eno (1925), 112 Ohio St. 175, 180-181. Based uponMarchetti and Gallagher, Ohio courts recognize that an individual only assumes the ordinary or inherent risks of a recreational activity, and may assert a negligence claim for injuries that result from risks not directly associated with the activity. See Lykins v. Fun Spot Trampolines,172 Ohio App.3d 226, 2007-Ohio-1800; Aber v. Zurz, 175 Ohio App.3d 385,2008-Ohio-778; Pope v. Willey, Clermont App. No. CA2004-10-077,2005-Ohio-4744; Whisman v. Gator Invest. Properties, Inc.,149 Ohio App.3d 225, 2002-Ohio-1850; Konesky v. Wood Cty. AgriculturalSoc, 164 Ohio App.3d 839, 2005-Ohio-7009.
 {¶ 18} Neither party in this case disputes this standard. "The types of risks associated with [an] activity are those that are foreseeable and customary risks of the * * * recreational activity."Pope at ¶ 11.
 {¶ 19} The issue in this case closely resembles those discussed in Aber v. Zurz, and this court's decision inLykins v. Fun Spot Trampolines. In Aber, the plaintiff, Aber, broke his jaw when thrown from an inflatable tube being pulled by a boat driven by Zurz. 2008-Ohio-778 at ¶ 2. The Ninth Appellate District noted that, although the boat was properly traveling in the designated water ski zone, the zone was crowded that day. Id. Zurz was traveling at a high rate of speed and made a sharp turn to avoid other boats or people in the water, causing the tube to flip. Id.
 {¶ 20} The court recognized that "falling off the tube is a foreseeable and customary risk of tubing;" however, "Zurz was not traveling at a speed typical for tubing" based upon the deposition testimony of Aber and several of the boat's passengers. Id. at ¶ 13. "[T]he specific facts of this case show that this risk was elevated by the speed of the boat and other *Page 7 
conditions solely under Zurz's control." Id. at ¶ 14. "Aber could not have foreseen this elevated risk." Id. "[T]he risk in this case was directly correlated to the high rate of speed of the boat" and "could have been eliminated by traveling at a typical speed." Id. As a result, the court determined that primary assumption of the risk was inapplicable because "the risk of falling off a tube and breaking one's jaw in several places [from] being pulled at a high rate of speed in a crowded ski lane is not an inherent risk of tubing."
 {¶ 21} In Lykins, the plaintiff attended a party at the home of her cousins, Michael and Marry Thompson. 2007-Ohio-1800
at ¶ 2. That evening, Lykins and four other guests, decided to use the Thompsons' large circular trampoline located in the backyard as she had on several previous occasions. Id. at ¶ 3. While standing on the perimeter of the trampoline as her brother jumped in the middle, Lykins lost her balance and fell on her back. Id. at ¶ 5. Lykins sustained a broken neck and crushed spinal cord, rendering her quadriplegic. Id.
 {¶ 22} In reviewing the applicability of the primary assumption of the risk doctrine, this court found that the risks that caused Lykins' injury were not foreseeable as a matter of law. Id. at ¶ 35. This court noted that when engaging in a recreational activity, a participant can only assume the "ordinary risks" of the activity. Id. Specifically, this court found that "[t]he dangers allegedly giving rise to appellant's injury include the hard, inflexible surface of the trampoline mat caused by the presence of more than 225 pounds and [a] double bounce created by more than one person using the trampoline at one time." Id. These risks were "not inherent in normal trampoline use." Id. at ¶ 36. "While falling down, colliding with others, or potentially falling off the apparatus altogether may be foreseeable risks in trampoline use, we cannot find as a matter of law that the same is true for the conditions at issue here, given the facts of this case." Id.
 {¶ 23} We acknowledge that a hayride is a recreational activity with some associated risks. The trial court correctly identified the potential risks associated with hayrides, noting *Page 8 
that a "wagon is pulled across hill and dale over uneven terrain that might contain holes and ruts." On a hayride, it is likely that the wagon may encounter holes and ruts in the terrain and a passenger could fall from the wagon as a result. The passenger assumes the risk of any injury caused by the wagon hitting a hole or rut in the ground.
 {¶ 24} Andrea Brennan's injury did not result from this risk. Andrea did not fall because the wagon encountered a hole or rut in the terrain. Andrea's injury resulted from the trailer losing traction and picking up speed after cresting a rise in the field, requiring her to jump or fall from the wagon. According to the deposition testimony of all of the parties, the hayride in this case, like most hayrides, was designed to be a leisurely ride over the Schappachers' property at no more than three m.p.h. Children were included in the hayride. Losing control of a tractor-pulled hayride is not an inherent risk of hayrides.
 {¶ 25} If we were to follow the reasoning of the trial court, primary assumption of the risk would preclude recovery for almost any injury occurring on a hayride; including those risks that are not inherent to the activity. Like Aber andLykins, Andrea Brennan's injury did not result from a customary, inherent risk of the activity. As a result, primary assumption of the risk is inapplicable.
 {¶ 26} Further, after review of the record, we find that genuine issues of material fact exist and a reasonable jury could conclude that the hayride was negligently operated by the Schappachers. In its decision, the trial court found that the Brennans failed to establish negligence. The court held that the Brennans could not demonstrate the proximate cause of the accident and also could not rely upon the doctrine of res ipsa loquitur.
 {¶ 27} The trial court stated that the doctrine of res ipsa loquitur was unavailable to the Brennans "because accidents with farm machinery and equipment can happen in the absence of negligence. Negligence is a fact to be proven; it is never presumed. The mere happening of an accident does not give rise to a presumption of negligence." *Page 9 
 {¶ 28} This is a misstatement of the law of res ipsa loquitur. First, the standard to establish res ipsa loquitur requires the injured party to demonstrate: 1) that the instrumentality causing the injury was, at the time of the injury or at the time of the creation of the condition causing the injury, under the exclusive control of the defendant; and 2) that the injury occurred under such circumstances that, in the ordinary course of events, it would not have occurred if ordinary care had been observed. Brokamp v. Mercy Hosp. Anderson (1999),132 Ohio App.3d 850, 869.
 {¶ 29} Second, res ipsa loquitur is not a presumptive doctrine where, once the elements are met, the trier of fact must find culpability. 70 Ohio Jurisprudence 3d (2004) 283, Negligence, Section 148. Rather, res ipsa loquitur is an evidentiary rule that permits, but does not require, the trier of fact to draw an inference of negligence if a claimant satisfies the elements of the doctrine. Id. at Section 147.
 {¶ 30} Clearly, the Schappachers had exclusive control over the hayride and tractor in this case, but the trial court found that res ipsa loquitur was inapplicable because "accidents with farm machinery and equipment can happen in the absence of negligence." We acknowledge that farm machinery accidents can occur without negligence, but we cannot conclude as a matter of law that such accidents are common or "ordinary;" especially when the equipment is driven under three miles per hour over a recently-mowed path as in case at bar. Accordingly, based upon the evidence in the record, a genuine issue of material fact exists regarding the applicability of res ipsa loquitur.
 {¶ 31} Moreover, advancing a theory of res ipsa loquitur does not preclude a party from also advancing a traditional negligence cause of action in the alternative. Seneca Ins.Co., Inc. v. Vogt Auto Serv. (M.C. 1991), 61 Ohio Misc.2d 36, 39
("If the situation is a proper one for the application of the doctrine [of res ipsa loquitur], the plaintiff by pleading or by proof of a specific cause of the damage does not lose his right to rely on the doctrine"). See, *Page 10 
also 70 Ohio Jurisprudence 3d (2004) 283, Negligence, Section 155. Instead, a plaintiff is precluded from relying upon the doctrine of res ipsa loquitur when attempting to furnish "a complete explanation of the specific cause of [the] accident." Note, Torts — Res Ipsa Loquitur Is Inapplicable When a Plaintiff Offers Expert Testimony to Furnish a Complete Explanation of the Specific Cause of the Accident (1996), 25 U.Balt. L. Rev. 261, 265.
 {¶ 32} Additionally, the trial court found that the Brennans could not sustain a negligence cause of action because they "advanced a number of theories in an attempt to create a factual basis for a claim of negligence" and "it would be outright speculation to allow a jury to choose between these alternatives without proof that a particular alternative caused the accident."
 {¶ 33} The record contains sufficient evidence to create an issue of material fact regarding proximate cause. Specifically, deposition testimony revealed that the loss-of-control of the tractor could have been caused by dew or moisture on the ground, causing the tractor to slide; the tractor being too small to support the weight of the hay wagon; and the speed of the tractor being too fast as it crested the hill.
 {¶ 34} These are not unrelated, independent "theories" of causation, as characterized by the trial court. Rather, they are all factors or conditions that may, or may not, have been present during the accident and possibly caused the tractor to go out-of-control. All, or none, of these conditions may have been present and contributed to the accident. This is an issue for the trier of fact.Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 590. Nor is the trier of fact required to choose which condition, if any, was the exact proximate cause as long as one proximate cause led to the injury. Rhodes v. Firestone Tire Rubber Co., Franklin App. No. 80AP-314, 2008-Ohio-4898, ¶ 15 (plaintiffs must only prove a proximate cause, not the proximate cause).
 {¶ 35} As a result, we cannot find that the Schappachers are entitled to judgment as a *Page 11 
matter of law. The Brennans have demonstrated genuine issues of material fact on their claim of negligence, including res ipsa loquitur.
 {¶ 36} The Brennans' first assignment of error is sustained.
 {¶ 37} Assignment of Error No. 2:
 {¶ 38} "THE TRIAL COURT ERRED IN RENDERING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES ON THE APPELLANTS' CLAIM OF NEGLIGENT ENTRUSTMENT."
 {¶ 39} In the second assignment of error, the Brennans argue that the trial court erred by granting summary judgment to the Schappachers on the claim of negligent entrustment. The Brennans urge that Daniel negligently entrusted Donald with the tractor because he was only 14 years of age and older family members were available at the picnic to drive the tractor.
 {¶ 40} In order to be successful on a claim under the theory of negligent entrustment, the Brennans must show that: 1) Donald was incompetent to operate the tractor; 2) Daniel knew or should have known Donald was incompetent; 3) nevertheless, Daniel entrusted Donald to operate the tractor; and 4) Donald's incompetence was the proximate result of the accident. Gulla v. Straus (1950),154 Ohio St. 193, paragraph three of the syllabus.
 {¶ 41} The Brennans fail to present evidence to support a claim of negligent entrustment. To the contrary, the evidence demonstrates that Donald was an experienced tractor driver, having driven since the age of six, and drove the tractor at the Schappachers' Fourth of July hayride the year prior. Moreover, in their depositions, the Brennans admitted that they were comfortable riding in the wagon driven by Donald.
 {¶ 42} The Brennans' second assignment of error is overruled.
 {¶ 43} Judgment affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. *Page 12 
BRESSLER, P.J., concurs. WALSH, J., dissents.