Cook, J.
This case presents the issue of whether the public policy precluding liability insurance coverage for acts of sexual molestation also prohibits coverage for a nonmolester for related claims alleging negligent supervision, negligent retention, and negligent failure to warn. Because we conclude that such coverage does not violate public policy, we reverse the judgment of the court of appeals and remand this cause for further proceedings.
I. Standard of Review
We review the grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 245. Therefore, Interstate may prevail under Civ.R. 56(C) only if “(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.” Id., citing State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150, 152.
*391 II. Application of Ohio Public Policy
We now consider whether, as a matter of law, Ohio public policy precludes insurance coverage for the negligence alleged here. We conclude that it does not.
As early as 1938, this court found that it was “well settled from the standpoint of public policy that the act of intentionally inflicting an injury cannot be covered by insurance in anywise protecting the person who inflicts such injury.” Rothman v. Metro. Cas. Ins. Co. (1938), 134 Ohio St. 241, 246, 12 O.O. 50, 52, 16 N.E.2d 417, 420. See, also, Commonwealth Cas. Co. v. Headers (1928), 118 Ohio St. 429, 161 N.E. 278. Accordingly, we have long adhered to the view that Ohio prohibits insuring against liability for one’s own intentional torts. See Buckeye Union Ins. Co. v. New England Ins. Co. (1999), 87 Ohio St.3d 280, 283, 720 N.E.2d 495, 498; Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 38, 665 N.E.2d 1115, 1118; Wedge Products, Inc. v. Hartford Equity Sales Co. (1987), 31 Ohio St.3d 65, 67, 31 OBR 180, 181, 509 N.E.2d 74, 76 (no coverage for tort where employer was substantially certain that employees would be injured); Preferred Mut. Ins. Co. v. Thompson (1986), 23 Ohio St.3d 78, 81, 23 OBR 208, 210, 491 N.E.2d 688, 691.
Application of this public policy has not always been absolute. In Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 551 N.E.2d 962, for example, we addressed whether the general public policy precluding insuring against liability for intentional torts prevented an employer from procuring insurance for a tortious act performed not with purpose to injure but with the knowledge that injury was substantially certain to occur. We concluded that it did not.[5] We reasoned:
“It is often said that public policy prohibits liability insurance for intentional torts. This statement is based on ‘the assumption that such conduct would be encouraged if insurance were available to shift the financial cost of the loss from the -wrongdoer to his insurer. * * * ’ Farbstein & Stillman, Insurance for the Commission of Intentional Torts (1969), 20 Hastings L.J. 1219, 1245-1246. However, this blanket prohibition ‘makes no distinctions as to the various forms of intentional wrongdoing and does not admit the possibility that some torts might not be particularly encouraged if insurance were available for them.’ Id. at 1251. The better view is to prohibit insurance only for those intentional torts *392 where 'the fact of insurance coverage can be related in some substantial way to the commission of wrongful acts of that character. * * * ’ Isenhart v. General Cas. Co. (1962), 233 Ore. 49, 52-53, 377 P.2d 26, 28.” (Citations omitted.) Id. at 176, 551 N.E.2d at 965.
In Gearing, we then analyzed the general public policy in the context of sexual molestation claims. There, this court was asked to decide whether courts should infer intent to injure as a matter of law from the sexual abuse of a child. We held, as have the overwhelming majority of other jurisdictions, that courts should infer such intent. Gearing, 76 Ohio St.3d at 37-38, 665 N.E.2d at 1118. As a result, we concluded that public policy precluded the issuance of coverage for this intentional tort. Id. at 40, 665 N.E.2d at 1119.
We issued our decision in Gearing on the same day that we issued Cuervo v. Cincinnati Ins. Co. (1996), 76 Ohio St.3d 41, 665 N.E.2d 1121. In Cuervo, this court addressed whether a father could be indemnified under his homeowner’s policy for claims of negligence brought because his son, who was also an insured on the policy, molested a child. After first deciding that Gearing forbids indemnification of the son, this court went on to hold that public policy also forecloses indemnification of the father, saying:
“Similarly, the damages for which the Cuervos seek compensation flow from [the son’s] intentional acts of sexual molestation of a minor. Thus, and on this record, the obligation of Cincinnati to pay the judgment entered against his father * * * is precluded as well.” Id. at 44, 665 N.E.2d at 1122-1123.
The Diocese and Griffin interpret the Cuervo holding to say that the negligent insured is foreclosed from indemnification only when the intentional tortfeasor is an insured under the policy through which the negligent insured claims coverage. They assert that, unless the intentional tortfeasor is on the same policy as the negligent insured, insurance extends to negligence related to sexual molestation.
This court’s opinion in Cuervo did not, however, analyze the language of the Cuervos’ insurance policy. So, says Interstate, Cuervo cannot stand for the rule that coverage is denied only when the sexual molester is an insured on the same policy. Rather, Interstate argues, Cuervo stands for the proposition that “insurance to anyone for injuries flowing from sexual molestation is against public policy.”[6] (Emphasis added.)
*393 In order to resolve this debate between the parties, we reevaluate the Cuervo judgment that imputes the sexual molester’s intent to one whose conduct is only negligent with regard to the sexual molestation. In so doing, we continue to adhere to Cuervo’s holding that public policy precludes liability insurance coverage for intentional acts of sexual abuse. For the following reasons, however, we decline to adhere to that portion of Cuervo that precludes insurance coverage for a nonmolester’s negligence related to sexual molestation.
In Gearing, we stated that “[liability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial, criminal conduct.” Gearing, 76 Ohio St.3d at 38, 665 N.E.2d at 1118. We also opined that “[sjexual abuse of children constitutes conduct so reprehensible that the General Assembly has categorized such conduct as felonious upon commission of the proscribed acts themselves[.]” Id. at 38-39, 665 N.E.2d at 1119, citing R.C. 2907.05. The express societal condemnation that animates the public policy forbidding insurance for the intentional tort of sexual molestation, however, does not exist for the tort of negligence. Many of the claims against the Diocese and Griffin sound in negligence, and to deny them coverage as an extension of this public policy would be untenable.
This is so because the intentions of the molester are immaterial to determining whether the allegedly negligent party has coverage. Silverball Amusement, Inc. v. Utah Home Fire Ins. Co. (W.D.Ark.1994), 842 F.Supp. 1151, 1160, affirmed (C.A.8, 1994), 33 F.3d 1476 (permitting coverage for alleged negligent hiring and supervision by an insured despite molestation by another insured), citing Sena v. Travelers Ins. Co. (D.N.M.1992), 801 F.Supp. 471, 475. In reaching this conclusion, we find the rationale employed in Silverball informative. While acknowledging that jurisdictions have arrived at different conclusions as to whether alleged negligence related to sexual molestation can constitute a policy occurrence, the Silverball court reasoned that the intentions or expectations of the negligent insured must control the coverage determination, and not the intentions or expectations of the molester. Id. at 1160. The court explained that a contrary practice would be unreasonable, saying:
“The ultimate effect of [those opinions denying coverage] leads to a metamorphosis in which certain negligent actions are transformed by the court into intentional actions for the purposes of deciding negligent hiring cases involving sexual abuse. Such a decision effectively dissolves the distinction between intentional and negligent conduct, allowing the intentional act to devour the negligent act for the purpose of determining coverage. The correct method of analyzing this issue in cases with the factual setting and insurance policy provisions involved * * * would deal with each act on its own merits and *394 recognize that employers who make negligent hiring decisions clearly do not intend the employees to inflict harm.” Id. at 1163.
A contrary interpretation that refuses to distinguish between the abuser’s intentional conduct and the insured’s alleged negligence would impermissibly ignore the plain language of an insurance policy that excludes from coverage bodily injury that was expected or intended from the standpoint of the insured. See United States Fid. & Guar. Co. v. Open Sesame Child Care Ctr. (N.D.Ill. 1993), 819 F.Supp. 756, 760.[7] Here, Interstate does not dispute that neither the Brothers nor the individual members of the Brothers against whom claims were brought qualify as insureds under the terms of the involved policies. Accordingly, concluding that the Diocese or Griffin, the actual insureds, expected or intended the injuries that Doe sustained would not only be a tortured interpretation of the facts of this case, but an inherently illogical interpretation as well. See Silverball, 842 F.Supp. at 1158 (“It would require a tortured interpretation of this ease to decide that when Silverball hired [the molester] it intended or expected that he would molest children”).
Further, unlike in instances of sexual molestation, permitting coverage for the type of conduct alleged here does not “ ‘subsidiz[e] the episodes of child sexual abuse of which its victims complain, at the ultimate expense of other insureds to whom the added costs of indemnifying child molesters will be passed.’ ” Gearing, 76 Ohio St.3d at 39, 665 N.E.2d at 1119, quoting Horace Mann. Ins. Co. v. Fore (M.D.Ala.1992), 785 F.Supp. 947, 956. Rather, the critical issue is the nature of the intent — inferred or otherwise — of the party seeking coverage. Cf. Preferred Mut. Ins. Co., 23 Ohio St.3d at 81, 23 OBR at 210, 491 N.E.2d at 691, and Transamerica Ins. Group v. Meere (1984), 143 Ariz. 351, 356, 694 P.2d 181, 186 (both finding the public policy precluding liability insurance for intentional torts inapplicable to self-defense because the concern over indemnifying wrongful action is negated by the purpose of the actor). Society does not want to encourage or indemnify the wrongful conduct of the molester, but precluding coverage for a negligent party would not further this goal. See Silverball, 842 F.Supp. at 1164 (“This public policy [against coverage] does not apply when the *395 wrongdoer is not helped and an insured who did not commit the wrong receives the protection of the insurance contract”). Instead, precluding coverage would risk preventing the victim from obtaining a fair and adequate recovery, in contravention of the purpose of modern tort law. See Harasyn, 49 Ohio St.3d at 176, 551 N.E.2d at 965 (explaining that “public policy [has come] to favor liability insurance for negligent acts as a means of assuring that innocent persons are made whole”).
Finally, here, unlike in Gearing, we do not believe that “ ‘the average person purchasing homeowner’s insurance would cringe at the very suggestion that he was paying for such coverage * * * [a]nd certainly * * * would not want to share that type of risk with other homeowner’s policyholders.’ ” Gearing, 76 Ohio St.3d at 39, 665 N.E.2d at 1119, quoting Rodriguez v. Williams (1986), 42 Wash.App. 633, 636, 713 P.2d 135, 137-138. While it is indeed true that the average person would likely find liability coverage for the intentional tort of sexual molestation loathsome, the same rationale cannot extend to negligence. The average person would no doubt find such coverage to be the purpose for which he obtained insurance.
Accordingly, we modify Cuervo and Westfield to hold that Ohio public policy permits a party to obtain liability insurance coverage for negligence related to sexual molestation when that party has not committed the act of sexual molestation. In light of this holding, we find that the court of appeals erred in holding that the acts of negligence alleged here could not constitute occurrences under an insurance policy as a matter of law.
III. Conclusion
Because we now hold that coverage under the Interstate policies would not violate public policy, we reverse the court of appeals’ judgment in favor of Interstate that was based on our prior holdings in Gearing and Cuervo. The cause is remanded for further proceedings consistent with this opinion.[8]

Judgment reversed and cause remanded.

Moyer, C.J., F.E. Sweeney and Pfeifer, JJ., concur.
Douglas and Resnick, JJ., concur in judgment only.
Lundberg Stratton, J., concurs in part and dissents in part.

. We recognize that there is debate within this court concerning the current state of the law on whether “substantial-certainty” torts fall within the public policy exclusion for insurance coverage. See Buckeye Union Ins. Co. v. New England Ins. Co. (1999), 87 Ohio St.3d 280, 288, 720 N.E.2d 495, 502 (Cook, J., dissenting). In this case, however, this question is not implicated. Rather, this court’s explication of the public policy in Harasyn is used only to inform today’s decision as to whether the purpose of the public policy extends to negligent conduct.

. Support for this interpretation lies in this court’s only application of Cuervo. In Westfield Cos. v. Kette (Mar. 29, 1996), Erie App. No. E-95-051, unreported, 1996 WL 139636, the Sixth District found that coverage for the wife of an alleged molester existed under a homeowner’s policy that provided coverage for an insured’s negligence, “irrespective of whether a co-insured’s intentional acts give rise to an exclusion for him.” Id. at 9, 1996 WL 139636, at *4. We summarily reversed, based on the authority of Cuervo. Westfield Cos. v. Kette (1996), 77 Ohio St.3d 154, 672 N.E.2d 166. To the extent that Cuervo is modified this day, so too is Westfield modified.

. See, also, Evangelical Lutheran Church in Am. v. Atlantic Mut. Ins. Co. (C.A.5, 1999), 169 F.3d 947 (finding that a duty to defend insured existed under policy excluding bodily injuries expected or intended by the insured, because the negligence alleged was not an intentional tort, and the molester’s acts should not be considered the insured’s acts); St. Paul Fire & Marine Ins. Co. v. Schrum (C.A.8, 1998), 149 F.3d 878, 881 (holding that molestation by third party is “merely incidental” to claim of negligent supervision despite exclusion for bodily injury “arising out of any sexual act, including but not limited to molestation”); Am. States Ins. Co. v. Borbor (C.A.9, 1987), 826 F.2d 888, 895 (permitting coverage because, under California law, allegedly negligent, separately insured wife of molester was an “innocent” insured and “[[liability insurance policies are typically *395 sold and purchased to provide indemnification for liability which may be imposed as a result of negligence”).

. Because other issues argued by the parties in the proceedings below are either not before this court or are not material to the issue of whether public policy precludes coverage of the sort sought here, we express no opinion as to these issues and their effect on whether indemnification is warranted under the facts of this case.