OPINION
{¶ 1} This case arises from an action in the Paulding County Court of Common Pleas. The court below granted summary judgment in favor of the plaintiff/appellee, United Ohio Insurance Company (UOI), against its insured, Sandra Myers and several other defendants. The appellants now bring the instant appeal, the facts of which follow.
 {¶ 2} Shannon Fry and her children, Chase and Tyler Fry, were guests at the home of Sandra Myers in January and March of 2000. During this period, Ms. Myers was the legal guardian of her grandson, Jeremy. Jeremy was previously found delinquent by the Juvenile Division of the Paulding County Court of Common Pleas for a violation of R.C.2907.06(A)(1), gross sexual imposition. At the time of the Frys' visits, Ms. Myers was under a court order to permit no unsupervised contact between her grandson and children under the age of eighteen. However, Ms. Myers failed to obey this order and neither warned the Frys of her grandson's propensities nor prevented unsupervised interaction between the children and Jeremy.
 {¶ 3} The Fry children brought suit, through their parents, against Myers and Jeremy, claiming that they were molested by Jeremy and seeking monetary damages. Robert and Shannon Fry, the parents, also filed a derivative action against Myers and her grandson. The Fry children sought compensation from UOI, asserting that the company's insured, Myers, negligently permitted Jeremy to have unsupervised contact with them, during which times they were sexually molested by him. For her part, Myers sought indemnification for the claims brought by the Frys through her UOI homeowners' policy.
 {¶ 4} UOI filed a complaint for declaratory relief, asking the lower court to order that it was not required to defend, indemnify, or extend coverage under Myers' homeowners' policy to any of the named defendants for either the claims of sexual abuse against Jeremy or the negligent supervision claims against Myers. Thereafter, the parties filed respective motions for summary judgment. The trial court granted summary judgment on behalf of UOI and entered declaratory judgment finding: (1) UOI was not obligated to provide coverage to Myers and Jeremy for the claims by the Fry children against Jeremy; (2) UOI was not obligated to indemnify Myers and Jeremy for the claims of the Fry children against Myers: (3) UOI was not obligated to provide Myers coverage for the claims brought by the Fry children against her; (4) UOI was not obligated to indemnify Myers against the claims of the Fry children; (5) UOI was not obligated to provide liability coverage to Shannon and Robert Fry for their claims against Myers and Jeremy; and (6) UOI was not required to defend Myers or Jeremy in any further actions by the defendants Fry.
 {¶ 5} It is from this final order that the appellants bring the instant appeal, asserting one assignment of error for our review.
 ASSIGNMENT OF ERROR {¶ 6} "The trial court erred in concluding as a matter of law that United Ohio Insurance Company owes no duty of indemnification to its insured for her negligent acts and omissions."
 {¶ 7} In considering an appeal from the granting of a summary judgment, our review is de novo, giving no deference to the trial court's determination[1] and applying the same standard for summary judgment as did the lower court.[2]
 {¶ 8} Summary judgment on behalf of UOI is proper only if, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) UIO is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving appellants, that reasonable minds could only conclude in favor of UOI.[3]
 {¶ 9} The appellants advance two distinct arguments in support of their sole assignment of error. Their first argument is that public policy, as reflected in recent Ohio Supreme Court decisions, favors coverage in this instance. This argument presents somewhat of a threshold issue regarding whether coverage may ever be deemed provided in circumstances such as this one.
 {¶ 10} In Gearing v. Nationwide Insurance Company, the Supreme Court of Ohio held that "[i]ncidents of intentional acts of molestation of a minor do not constitute `occurrences' for purposes of determining liability insurance coverage, as intent to harm inconsistent with an insurable incident is properly inferred as a matter of law from deliberate acts of sexual molestations of a minor."[4] This decision was premised on the "inferred intent rule," which stands for the proposition that harm is so inherent in sexual molestation that intent may be inferred regardless of whether the offender admits a purpose to harm.[5] On the same day that it decided Gearing, the court also ruled on Cuervo v. Cincinnati Insurance Company.[6] In Cuervo, a case which closely parallels this one, parents who had obtained judgments against an insured and his minor son for the son's sexual abuse of their children sued the insured's homeowners' insurance provider. Under the authority of Gearing, the court held that insurance coverage for a nonmolester's negligence related to intentional sexual molestation by another was precluded as part of the damages flowing from the molester's intentional act.[7]
 {¶ 11} The Cuervo decision was revisited and revised by the Ohio State Supreme Court in Doe v. Shaffer.[8] Expressly declining to follow the portion of Cuervo that precluded insurance coverage for a nonmolester's negligence related to an incident of molestation, the court held that "Ohio public policy permits a party to obtain liability insurance coverage for negligence related to sexual molestation when that party has not committed the act of sexual molestation."[9]
 {¶ 12} The appellee attempts to distinguish this case from Shaffer by asserting that because Ms. Myers violated a direct court order requiring her to prevent unsupervised contact between Jeremy and minor children, her actions were not negligent but rather intentional. The record contains a copy of a motion by the Paulding County Prosecutor moving the juvenile court to order Myers to show cause as to why she should not be held in contempt of the court order. However, we have not been provided with any judgment entry actually finding Myers in contempt and, although the appellants state that she failed to adhere to the court order, it is not admitted in the record that she intentionally violated the order. Indirect criminal contempt requires a finding of intent to disregard an order of court.[10]Thus, in the absence of such a finding we are especially unwilling to conclude that Myers' negligent acts and omissions where intentional.
 {¶ 13} The appellee further argues that Myers' failure was intentional because she had prior knowledge of Jeremy's propensities. Citing Ohio Farmers Insurance Company v. Perry,[11] the appellee suggests that Myers aided and abetted her grandson in the act of child molestation. We note that although a similar suggestion appears in the recitation of the trial court's opinion in Perry, this reasoning was not adopted by the Court of Appeals. Also, the Perry decision predates Shaffer and relies heavily on Cuervo in its reasoning. Accordingly, we find that the Shaffer holding applies to the instant case and that public policy does not preclude insurance coverage in the instant case.
 {¶ 14} We turn now to the appellants' argument that the trial court erred in finding that the terms of Myers' homeowners plan unambiguously excluded coverage for the claims against her. It is well settled that an insurance company owes no responsibility to its insured, or to others harmed by its insured's conduct, unless the alleged actions of the insured fall within the ambit of coverage provided by the policy.[12] Stated differently, coverage must be provided where an insured's conduct falls within the scope of coverage outlined by the policy, and not within an exception thereto.[13]
 {¶ 15} The UOI homeowners' policy through which Myers was insured at the time of the incidents alleged, provided coverage in relevant part as follows:
 {¶ 16} "Coverage E — Personal Liability
 {¶ 17} "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
 {¶ 18} "1. pay up to our limit of liability for the damages for which the insured is legally liable. * * *"
 {¶ 19} An occurrence is defined as: "an accident including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
 {¶ 20} "a. bodily injury; or
 {¶ 21} "b. property damage."
 {¶ 22} The definition of property damage is as follows: "bodily harm, sickness or disease, including required care, loss of services and death that results."
 {¶ 23} The appellee argues that Myers' negligent acts are clearly not covered under the policy because there is a relevant exclusion in the policy. The exclusion in question states:
 {¶ 24} "SECTION II — EXCLUSIONS
 {¶ 25} "* * *
 {¶ 26} "Medical payments to Others do not apply to bodily injury or property damage:
 {¶ 27} "b. arising out of the actual or threatened physical or mental abuse, corporal punishment, or sexual molestation by anyone of any person while in the care, custody or control of an insured, or by the negligent employment, supervision, or reporting to the proper authorities, or failure to so report, of any person for who the insured is or ever was legally responsible[.]"
 {¶ 28} This exclusion would clearly exclude coverage for Myers' negligent failure to prevent contact between her grandson and the Fry children. However, Myers was also covered by a "Replacement Plus" policy, which extended her coverage in exchange for an additional premium. The appellants argue that the language of this policy is in conflict with the language of the homeowners' policy, thus rendering the terms ambiguous. The appellants specifically point to the following section of the "Replacement Plus" policy:
 {¶ 29} "The definition of bodily injury is amended to include personal injury. Personal injury means injury arising out of one or more of the following offenses:
 {¶ 30} "a. false arrest, detention or imprisonment, or malicious prosecution;
 {¶ 31} "b. libel, slander or defamation of character; or
 {¶ 32} "c. invasion of privacy, wrongful eviction or wrongful entry.
 {¶ 33} "Section II Exclusions do not apply to personal injury."
 {¶ 34} The policy then lists six exclusions to which personal injury does not apply, none of which could be construed as encompassing Myers' negligence. The appellants argue that the exclusions therein supercede those contained in Section II of the homeowners' policy or at least contradict with them. They reason that because of this ambiguity, the exclusions must be strictly construed against the drafter, UOI, and in favor of the insured, Myers.[14] We do not agree with the appellants' argument.
 {¶ 35} The use of the word "include" in the "Replacement Plus" policy makes clear that "personal injury" is a more narrow subcategory of injury incorporated under the more general category of "bodily injury." As such, the definition of "personal injury" is limited to very specific injuries. Specifically, the language of the policy states: "Personal injury means injury arising out of one or more of the following offenses:
 {¶ 36} "a. false arrest, detention or imprisonment, or malicious prosecution;
 {¶ 37} "b. libel, slander or defamation of character; or
 {¶ 38} "c. invasion of privacy, wrongful eviction or wrongful entry."
 {¶ 39} The appellants contend that this list of offenses could be interpreted as mere examples of what constitutes "personal injury." They direct this Court to Auto-Owners Insurance Company v. Brubaker[15] in support of this contention. The Brubaker case dealt with a similar coverage issue under a policy that provided coverage for "personal injury." However, the language of that policy was substantially different from that in the UOI policy.
 {¶ 40} Under the coverage category "Personal Liability," the policy in Brubaker stated: "We will pay all sums which an insured person becomes legally obligated to pay as damages because of bodily injury, personal injury (libel, slander or defamation of character; false arrest, detention, or imprisonment or malicious prosecution; invasion of privacy, wrongful eviction or wrongful entry) or property damage covered by this policy."
 {¶ 41} The Brubaker court found that the parenthetical list of torts following "personal injury" could have been interpreted as mere examples of the types of acts subsumed by the term. Unable to find a commonly accepted definition of "personal injury," the court construed the language strictly against the insurer. The language of the policy at issue here, however, does not permit more than one interpretation of "personal injury." Rather than presenting a parenthetical list of offenses following the term, Myers' policy specifically states that "[p]ersonal injury means injury arising out of one or more of the following offenses * * *[.]"[16] It then proceeds to list the specific offenses to which the term applies. By use of the word "means" rather than "includes," for example, the policy language unambiguously expresses that it is providing an exact and exclusive definition of "personal injury." Myers' negligent acts and omissions do not fit within this exclusive list of offenses. Thus, we find that Myers' negligence does not fall under the rubric of "personal injury" but, rather, under the larger category of "bodily injury" and it is further excluded from coverage by Section II(b) of her homeowners' policy. Therefore, the trial court was correct in finding as a matter of law that UOI is not required to indemnify Myers for her negligent failure to prevent unsupervised interaction between Jeremy and the Fry children.
 {¶ 42} Accordingly, we find the appellants' sole assignment of error is not well taken and is hereby denied.
 {¶ 43} Having found no error to the appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW, P.J., and WALTERS, J., concur.
[1] Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720.
[2] Midwest Specialties, Inc. v. Firestone Tire Rubber Co.
(1988), 42 Ohio App.3d 6, 8.
[3] Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995),73 Ohio St.3d 679, 686-87.
[4] (1996), 76 Ohio St.3d 34, paragraph one of the syllabus.
[5] Id. at 36-37.
[6] (1996), 76 Ohio St.3d 41.
[7] Id. at 44.
[8] 90 Ohio St.3d 388, 2000-Ohio-186.
[9] Id. at 395.
[10] City of Cleveland v. Ramsey (1988), 56 Ohio App.3d 108, 111.
[11] (Aug. 29, 1997), Ashtabula App. No. 99-A-0065.
[12] Gearing, 76 Ohio St.3d at 36.
[13] Id.
[14] Allstate Ins. Co. v. Boggs (1972), 27 Ohio St.2d 216, 219.
[15] (1994), 93 Ohio App.3d 211.
[16] Emphasis added.