{¶ 36} I respectfully dissent from the majority.
 {¶ 37} In Doe v. Shaffer (2000), 90 Ohio St.3d 388, the Supreme Court of Ohio determined that Ohio public policy does not prohibit a party from obtaining liability insurance coverage for negligence stemming from another insured's intentional and criminal act of sexual molestation. Id. at the syllabus. In doing so, it cited with approval the decision of the court in Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.
(W.D.Ark. 1994), 842 F.Supp. 1151, affirmed (C.A.8, 1994), 33 F.3d 1476.Doe at 393. It quoted the following language of the Silverball court: *Page 12 
 {¶ 38} "The ultimate effect of (those opinions denying coverage) leads to a metamorphosis in which certain negligent actions are transformed by the court into intentional actions for the purposes of deciding negligent hiring cases involving sexual abuse. Such a decisioneffectively dissolves the distinction between intentional and negligentconduct, allowing the intentional act to devour the negligent act forthe purpose of determining coverage.'" Doe at 393, quotingSilverball at 1163. (Emphasis added.)
 {¶ 39} Relying on Doe, this court recently held that the murder of his former girlfriend by an adult, emancipated son, living with his parents, constituted an "occurrence" under the parents' homeowner's policy, and that the son's intentional, criminal act did not exclude coverage for his parents on a claim of negligent supervision. Havel v. Chapek, 11th Dist. No. 2004-G-2609, 2006-Ohio-7014, at ¶ 27-41.
 {¶ 40} Thus, Ohio law does not preclude coverage for Mark Collister's parents in this case, absent application of the "joint obligations" clause in the subject insurance policy. That is, Allstate would have a duty to defend, and depending on the evidence in the case, indemnify the Collister parents for negligent supervision or control of their son,unless the "joint obligations" clause allows Allstate to impute his intentional and criminal acts to them. I believe the rules of contract construction in this state do not allow such a reading of the "joint obligations" clause.
 {¶ 41} "In harmonizing apparently conflicting clauses of a contract they must be construed so as to effect to the intention of the parties as gathered from the whole instrument, and where the object to be accomplished is declared in the instrument, the clause which contributes most essentially to that object will control. So, anything in an *Page 13 
agreement which in any way conflicts with the chief purpose therein must give way to the clause which makes the major intent effective."Batsche v. Batsche (Dec. 18, 1974), 2d Dist. No. 4627, 1974 Ohio App. LEXIS 3603, at 6. (Citation omitted.)
 {¶ 42} It is black letter law that Ohio public policy generally prohibits the insuring of intentional tortious activity, such as Mark Collister's. Doe, supra, at 391-392. Equally we ll-recognized is that homeowner's insurance, such as the subject Allstate policy, is purchased to provide coverage against claims of negligence, such as those brought against Mark Collister's parents. Cf. Id. at 395. By reading the "joint obligations" clause as imputing their son's intentional and criminal acts to the Collister parents, the majority allows the intentional and criminal acts exclusion in the policy to "devour" the negligence coverage — which is the policy's principal purpose. This contradicts Ohio's laws regarding contract construction. Batsche, supra.
 {¶ 43} I agree with the majority that the courts cited by them in footnote 3 have upheld the validity of the "joint obligation" clause. However, my objection to its application herein has nothing to do with public policy, but merely with Ohio's own rules of contract construction.
 {¶ 44} Consequently, I respectfully dissent. *Page 1