OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Plaintiff-Appellant, Spike Industries, Inc., appeals the decision of the Mahoning County Court of Common Pleas that granted summary judgment to Defendant-Appellee, Midwestern Indemnity Company. Spike Industries argues that the trial court incorrectly concluded that its claimed loss was not governed by the "newly acquired or constructed" portion of the insurance policy it had with Midwestern. However, the contract covers personal property in newly acquired buildings, not newly acquired personal property, regardless of its location. Accordingly, Spike Industries' claim is not covered by that clause of the contract. The trial court's judgment is affirmed.
 {¶ 2} Spike Industries is a business which manufactures railroad spikes and its primary manufacturing facility is in Alliance, Ohio. On August 17, 2001, a fire destroyed that facility.
 {¶ 3} At the time, Spike Industries had an insurance policy with Midwestern. The policy covered the buildings owned by Spike Industries and the personal property owned by Spike Industries in these buildings. The policy insured the personal property on those premises up to $913,377.00. The parties extended coverage to "newly acquired or constructed property." Under that extension, the insurance of the personal property extended "to that property at any location you acquire other than at fairs or exhibitions." Property was "newly acquired or constructed" if the loss occurred within 180 days after it was acquired or construction began. The limits of liability for the business personal property lost under this extension was "$250,000 at each building."
 {¶ 4} Midwestern paid $913,377 to or on behalf of Spike Industries due to the fire at the Alliance location. Spike Industries later filed a claim with Midwestern for an additional $220,929.19 for personal property at the Alliance location which was acquired within 180 days of the fire. Midwestern denied the claim, maintaining that this claim was not covered by the "newly acquired or constructed property" extension.
 {¶ 5} Spike Industries filed a complaint claiming it was entitled to be reimbursed under the extension for the loss of its newly acquired personal property. The parties filed cross-motions for summary judgment. A magistrate heard the motions and issued a *Page 2 
decision granting summary judgment to Midwestern. Spike Industries filed timely objections, but on August 25, 2006, the trial court overruled those objections, adopted the magistrate's decision, and granted summary judgment to Midwestern.
 {¶ 6} Spike Industries' sole assignment of error on appeal argues:
 {¶ 7} "The trial court erred in overruling Spike's objections to the magistrate's decision and adopting the magistrate's decision sustaining Midwestern's motion for summary judgment."
 {¶ 8} When reviewing a trial court's decision to grant summary judgment, we apply the same standard as the trial court and, therefore, engage in a de novo review. Parenti v. Goodyear Tire Rubber Co.
(1990), 66 Ohio App.3d 826, 829. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v.Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-0186.
 {¶ 9} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-0107. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
 {¶ 10} The parties in this case are disputing the meaning of a contractual term. Spike Industries claims that the insurance policy covers all newly acquired personal property, other than that property acquired at fairs or exhibitions. Midwestern maintains that it only covers personal property at newly acquired locations, except for locations at fairs and exhibitions.
 {¶ 11} A court's role when asked to interpret a contract is to give effect to the intent of the parties to the agreement. Westfield Ins. Co.v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 11. The parties' intent resides in the language they chose to employ in *Page 3 
the agreement, and when that language is clear, a court may look no further to find the intent of the parties. Id. The words and phrases the parties use in an insurance contract must be given their natural and commonly accepted meaning. Tomlinson v. Skolnik (1989),44 Ohio St.3d 11, 12. Courts then look to the plain and ordinary meaning of those words and phrases unless another meaning is clearly apparent from the contents of the policy. Galatis at ¶ 11. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." Id. When contract terms are clear and unambiguous, courts will not, in effect, create a new contract by finding an intent that is not expressed in the clear language used by the parties. Alexander v. Buckeye Pipe LineCo. (1978), 53 Ohio St.2d 241, 246. However, ambiguities in insurance policies should be construed liberally in favor of coverage, unless such an interpretation would be unreasonable. Galatis at ¶ 14; Yeager v.Pacific Mut. Life Ins. Co. (1956), 166 Ohio St. 71, paragraph one of the syllabus.
 {¶ 12} The policy in question provides coverage for both real and personal property belonging to the business. The limits of insurance on real and personal property at the locations named in the declarations is $913,377.00. The policy was extended to property that was newly acquired or constructed. Property was newly acquired or constructed under the contract if it was acquired or construction began within 180 days of the loss.
 {¶ 13} The clause extending coverage to newly acquired or constructed property provided as follows:
 {¶ 14} "You may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.
 {¶ 15} "The most we will pay for loss or damage under this Extension is $250,000 at each building."
 {¶ 16} The dispute between the parties focuses on the phrase "that property at any location you acquire." Spike Industries contends that "you acquire" modifies "that property," while Midwestern contends that "you acquire" modifies "any location." We agree with Midwestern. *Page 4 
 {¶ 17} Spike Industries' interpretation of the contract would lead to an arbitrary distinction between personal property acquired at fairs and exhibitions and that acquired from other sources. There is no apparent reason to believe that personal property bought from these locations should not be insured, while the rest of Spike Industries' personal property, no matter the source, should be insured. In contrast, Midwestern's interpretation of the contract would protect Spike Industries' personal property in its buildings, but not its property at fairs and exhibitions. This is a rational distinction since the rest of the contract is designed to primarily insure the real estate owned by Spike Industries and the personal property within that real estate, not all of Spike Industries' personal property, wherever it may be found.
 {¶ 18} The second sentence of that clause, which limits coverage to "$250,000 at each building," supports this conclusion. Such a limitation would be meaningless under Spike Industries' interpretation, since that interpretation would cover all personal property, regardless of location, other than the personal property acquired at fairs or exhibitions. There is no assurance that all of Spike Industries' personal property will be in buildings. Some may be in transit, off-site with employees doing work outdoors or otherwise outside of a building. The limitation to losses in buildings shows that the coverage only applies to property in buildings — and Midwestern's interpretation of the contract is the only interpretation limiting coverage to the personal property found in buildings.
 {¶ 19} For these reasons, both the words of the contract and its context show that the policy covers personal property at newly acquired locations, not newly acquired personal property at any location. Spike Industries' arguments to the contrary are meritless.
 {¶ 20} In this case, the property Spike Industries claims as a loss was not in a newly acquired building and Spike had already reached the limits of its insurance on that building. Accordingly, Midwestern was not obligated to satisfy Spike Industries' claim. The trial court properly granted summary judgment to Midwestern and Spike Industries' sole assignment of error is meritless. For these reasons, the judgment of the trial court is affirmed. *Page 5 
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1