[Cite as *Murray v. Auto-Owners Ins. Co.*, 2019-Ohio-3816.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

James T. Murray, Trustee

Appellant

v.

Auto-Owners Insurance Company

Appellee

Court of Appeals No. E-18-060

Trial Court No. 2012-CV-0859

**DECISION AND JUDGMENT**

Decided: September 20, 2019

* * * * *

James T. Murray, pro se.

Andrew J. Ayers, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, James T. Murray, appeals from the October 16, 2018 judgment of the Erie County Court of Common Pleas granting summary judgment to appellee, Auto-Owners Insurance Company (hereinafter "Auto-Owners") on the remaining claims and dismissing the complaint of appellant. For the reasons which follow, we affirm.

**{¶ 2}** On appeal, appellant asserts the following assignments of error:

Assignment of Error No. 1

Where a trial court denies a claim based on a finding that the damages incurred by an insured are not recoverable because all the damages are excluded by virtue of the language in the policy denying coverage for damages that are ordinary wear and tear, it is error to strike affidavits from the record which affidavits were specifically designed to proffer testimony from:

1. a person with specialized or expert knowledge that the losses in the amount of $16,000 cannot be described as ordinary wear and tear. Exhibit 8.

2. Affidavit from Plaintiff-Appellant that included copies of the bills that were necessitated by the repairs that were needed to repair the garage. Exhibit 9.

Assignment of Error No. 2

Where a trial court recites facts to support a summary judgement denying insurance benefits to a claimant and those facts are not in the record it is improper to grant a summary judgement.

Assignment of Error No. 3

Where an insurance company:

1. was presented with 43 bills in the amount of approximately $16,000 documenting claimed damages by the occupant;

2. these bills were presented to the insurance company years before they obtained an affidavit from the occupant;

3. not one of the bills was brought to the attention of the occupant who provided the subject affidavit;

4. the affidavit only asserted a vague and nonspecific statement, i.e. Doughty claimed that the prior occupant of the house, who let the property be foreclosed upon, raised dogs and there was substantial damage to drywall in the house and garage as a result." Exhibit 10.

5. Bills were presented to the insurance company for damages that were patently not the result of damage caused by a dog or dogs.

Such affidavit cannot be used as the basis for a blanket summary judgement.

### Assignment of Error No. 4

Where an insurance company fails in its admitted duty to investigate a claim, including:

1. a failure to even talk to the person identified as the person who could provide the insurance company with details as to every single bill incurred by the claimant;

2. elects instead to take only the deposition of the person who was identified as the person charged with primarily doing the legal work (James T. Murray) as opposed to the person who was on site and was in charge of the repairs;

3.

3. in the deposition of James T. Murray, the insurance company fails to ask James T. Murray for any information about the condition of the property when he purchased it;

4. failed to make any inquiry from James T. Murray with respect to his knowledge of the condition of the property when it was acquired even though James T. Murray drafted all of the instruments associated with selling the property under a land contract.

It is error to grant a blanket summary judgement to the insurance company based on the insurance company's claim that all of the $16,000 in occupant caused damages were caused by a prior occupant of the property.

Assignment of Error No. 5

Before proceeding with this argument, the history of Auto Owners denials is briefly recited. Before belatedly obtaining an affidavit from the occupant of the premises, they had previously denied that the fence was a covered loss because there was no documentation that a fence existed. When that denial did not work, Auto Owners went on to claim that it was not covered because it wasn't attached to the house. Finally Auto Owners came up with the final reason for denying any recovery for the fence, i.e. a declaration by the occupant, that

Mr. Doughty thought he was providing a benefit by removing the fence. In his affidavit Doughty explicitly testified that it was his intention to complete the land contract when he removed the fence which is

essentially an admission that he should not have removed the fence in the absence of completing the land contract.

Most importantly, his declaration that this was an improvement to the property was an opinion. It is not an indisputable fact but an opinion and an opinion cannot be the basis for a summary judgement.

Taking the fence may very well have been a benefit to Doughty and his family but it's pretty ridiculous to summarily rule that the taking of the fence benefited Plaintiff-Appellant.

Assignment of Error No. 6

Where the occupant of an insured premises tears all of the drywall from the garage with the intent of insulating the garage and then replacing the drywall but vacates the property at the destructive stage of the project, leaving the insured owner with the trouble and expense to reinstall drywall, it is error for the court to summarily rule that the owner of the premises was benefited based on nothing more than an affidavit from the occupant opining that leaving the garage in a destructive condition was somehow a benefit to the owner.

Assignment of Error No. 7

Where an occupant of the insured premises tears all the drywall out of a garage before vacating the property, it is error to grant a summary judgement denying insurance benefits based on a finding of fact that is not

found anywhere in the record. In justification of the summary judgement the court specifically declared:

"However, it is undisputed that Plaintiff authorized the work to be done."

There is absolutely nothing in the record to support this finding of fact and I challenge opposing counsel to demonstrate where in the record one finds justification for this declaration. Exhibit 1, paragraph 6.

Assignment of Error No. 8

Where an insurance company files a motion for summary judgement that is reversed and remanded because the insurance company failed in its duty to investigate an insured's claim for occupant caused damage, the insurance company cannot file a second motion for summary judgement based on an investigation conducted after the remand, particularly where there is no showing that the newly asserted alleged facts could not have been discovered and argued before the remand.

Assignment of Error No. 9

Where a trial court grants a summary judgement and is reversed and on remand grants a second summary judgement to the opposing party and on remand once again grants a summary judgement to the opposing party but before doing so issues a trial order on March 7, 2018, seven months before the summary judgment requiring the aggrieved party to:

1. retain an attorney;

2. ifle [sic] a trial brief;

3. file jury instructions;

4. an exhibit list;

5. a witness list;

6. motions in limine;

7. denies all requests for a hearing;

and a party is otherwise required to do all that is needed to prepare

for a jury trial namely:

1. scheduling witness;

2. subpoenaing witnesses;

3. retaining a lawyer;

4. working with the lawyer regarding preparation for voir dire,

opening statement, direct examination, cross examination, etc.;

5. preparation of a response to a motion to vacate the trial date filed

by the opposing party, and denies an opportunity to respond to an opposing

party's motion to vacate the trial date.

There is sufficient showing of bias to warrant a reversal of the

summary judgement and a remand ordering that a different judge address

any other motions filed by Auto Owners. See Exhibit 15.

{¶ 3} This case involves claims against Auto-Owners under an insurance policy

issued on a single family home in Huron, Ohio, owned by appellant (hereinafter the

7.

"premises"). Appellant purchased the premises in foreclosure in April, 2010, and secured insurance coverage on the premises through Auto-Owners. Richard and Amy Doughty occupied the premises under a land contract to purchase the premises for $130,000 from appellant if they were able to obtain conventional financing in two years. They paid $5,000 down and $1,000 a month as they occupied the premises from May, 2010, until November or December, 2011, when they abandoned their interest under the land contract and vacated the premises.

{¶ 4} When appellant regained possession of the premises, he asserts he discovered significant damage to the premises. Appellant filed a claim for $5,800 to repair fractured drainage tile, which had caused flooding of the basement. He also alleged the failure of the tenants to notify appellant of the water leak resulted in further damage to the property. Finally, he alleged the tenants caused further damage to the premises, which was mischievous in nature.

{¶ 5} The trial court granted summary judgment to Auto-Owners. We affirmed the granting of summary judgment in part in *Murray v. Auto-Owners Ins. Co.*, 2015-Ohio-3295, 40 N.E.3d 679 (6th Dist.). We affirmed the granting of summary judgment on all the claims except appellant's claim in the final sentence of paragraph No. 6 of the complaint that: "The behavior of the occupant caused other damages to the premises other than water damage and such behavior was mischievous in nature." We found this additional conduct, unrelated to the damaged tiling and/or water damage, remained to be adjudicated and remanded the case to the trial court for further proceedings on this issue.

8.

*Id*. at ¶ 58-58. On remand, Auto-Owners filled a second motion for summary judgment asserting the facts are undisputed and it was entitled to summary judgment on the remaining issue.

{¶ 6} In support of its motion, Auto-Owners submitted the affidavit of Richard Doughty, Jr. Doughty attested that he agreed to purchase the premises under a land contract and had permission from appellant to make any changes necessary and beneficial to the property. Appellant testified at his deposition that he had "one very vague memory of" such an agreement.

{¶ 7} Doughty further attested that when he took possession of the premises, he found the prior owners had raised dogs, which caused substantial damage to the drywall in the house and garage. While he began to replace the drywall, he did not complete the work before vacating the property. He also removed a rusted chain link fence that surrounded the property because it was unsafe. He abandoned the land contract, and forfeited his $5,000 deposit, when he was presented with a better opportunity to acquire a house. Doughty denied damaging the property and attested he only made repairs which improved the interior and exterior of the home.

{¶ 8} Attached to appellant's complaint were his affidavit and the affidavit of his wife, Shirley Murray. Appellant only attested that $5,800 was expended to repair fractured tile which had led to the water damages. Shirley Murray attested that she addressed the damage to the property after appellant regained possession. She further asserted that $18,000 in damages had to be repaired before the property could be rented,

which included the damage from water leaking into the basement. Appellant testified at his deposition that the property was repaired and rented within six weeks.

{¶ 9} Appellant further testified at his deposition regarding the condition of the home when he purchased the home. He testified that "to walk through it, nothing visibly that you would say, 'Ooh, I don't want to buy this property.'" He further testified "[i]t was in a habitable and presentable condition." He testified that although the fence was old, it was not falling apart.

{¶ 10} However, when appellant regained possession of the premises, he found the fence had been removed, the home was very dirty, there was water in the basement, the knobs on the stove had been removed, the garage drywall had been removed and insulation partially installed, the carpeting had to be replaced, drywall in the house had to be replaced because of holes in the walls, the furnace needed repair, and some electrical work was required. Appellant was able to present receipts for all of the work needed to make the house ready for rental. However, he could not testify regarding every expenditure because Shirley Murray supervised all of the work and had died while this litigation was pending. Appellant indicated he never contracted the Doughtys about the damages because he did not have any forwarding information.

{¶ 11} Appellant also presented the affidavits of two individuals in support of his opposition to the motion for summary judgment. Dallas Hamm attested he assisted appellant in repairing the premises at issue from December 2011 through the first few months of 2012, after the tenants had vacated the premises. He observed the premises

10.

were a "terrible mess." The premises required removal of garbage, extensive cleaning, replaced carpeting, and painting. At his deposition, Hamm testified he had never seen the premises before the Doughtys lived there. But, after they vacated the premises, he observed the garage was the worst area because the drywall had been removed and was piled up in the garage along with a lot of cardboard. The drywall in the home had large holes in it. There was something on the garage floor that had to be cleaned with a pressure washer. A dehumidifier was purchased to dry out the basement. The dishwasher leaked. Bathroom tiles had to be replaced and a new toilet installed but he did not know the reason for the work. Joshua Koelsch attested he determined the cost to replace the missing fence which had enclosed the back yard was $4,125.

{¶ 12} Appellant also submitted an additional affidavit. He attested he is an experienced landlord and had never seen property left in such a terrible condition. He attested he had to purchase a new stove because the existing stove was inoperable due to missing knobs which could not be replaced. The garage was filled with parts of the garage, including drywall, and other discarded materials. The fence that was there as late as April 30, 2011 based on an aerial photograph was gone. A door had a hole in it the size of a fist and was off its hinges. The dishwasher, furnace, and electrical system also required significant repairs. A summary of the bills appellant submitted reflected costs incurred for purchase of a dehumidifier, stove, dishwasher, and furnace. This list includes the cost for cleaning, general maintenance, repairs, materials, supervision, painting, garage repairs, parts and supplies, electrical repairs, flea powder, the water bill

11.

and advertising for a new tenant. These costs totaled $10,938.74. Appellant also listed additional losses for lost rent, real estate taxes, and a replacement fence ($4,125), for a grand total of $16,263.74.

{¶ 13} Auto-Owners asserted the policy covers only the home and "other structures" connected to the home and excludes loss of personal property due to "theft, burglary, or larceny." Auto-Owners asserted the fence is not an "other structure" because it is not part of a structure and is easily removable and, therefore, is classified as personal property. Auto-Owners also asserted the theft of the fence and stove are excluded from coverage.

{¶ 14} As to the remaining expenses incurred by appellant, Auto-Owners asserted appellant never claimed these expenses resulting from accidental direct loss to the property. Rather, asserted the affidavits of appellant and his wife and the discovery responses establish these expenses were incurred in order to prepare the property for a new tenant. Such expenses are normal wear and tear, which is not a covered loss. Therefore, Auto-Owners argued appellant failed to meet his burden of proof to establish any expenses he identified resulted from a covered loss.

{¶ 15} The trial court granted summary judgment to Auto-Owners finding the undisputed evidence supported a finding that appellant presented no evidence of the condition of the property when he purchased the home, some of the alleged damages encompass normal wear and tear, and some of the damages arose out of the repairs and

12.

remodeling begun by the former tenant with appellant's approval. Therefore, the trial court concluded there was no "accidental direct physical loss" and the alleged damages were not covered losses.

{¶ 16} The appellate court reviews the grant of summary judgment under a de novo standard of review. *Doe v. Shaffer,* 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Applying the requirements of Civ.R. 56(C), we uphold summary judgment when it is clear "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, [adverse to the nonmoving party], who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 17} The insured has the burden to prove coverage under the policies and his loss, the insurer has the burden to prove an exclusion to coverage applies. *Goodell v. Motorists Mut. Ins. Co.*, 6th Dist. No. WD-16-071, 2017-Ohio-8425, 99 N.E.3d 1158, ¶ 7 (6th Dist.). Contrary to appellant's assertions, an insurance company does not have to investigate on behalf of appellant to determine the damages sustained and to establish the basis for coverage.

{¶ 18} The party moving for summary judgment always carries the burden of establishing that summary judgment is an appropriate remedy even where the moving party does not bear the burden of proof at trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997). The moving party has the initial burden of coming forward

13.

with a basis for summary judgment, identifying the evidence in the record which establishes there is no genuine issue of material fact, and also identifying the essential elements of one or more of the nonmoving party's claims that are not supported by the record. *Id*.; *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988), quoting *Massaro v. Vernitron Corp*., 559 F.Supp. 1068, 1073 (D.Mass.1983); *Goodell* at ¶ 5. If this burden is met, the non-moving party has a reciprocal burden to present specific evidence on any issue for which it bears the burden of production at trial to show that there is a genuine issue for trial. Civ.R. 56(E); *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449, 663 N.E.2d 639 (1996).

{¶ 19} The Auto-Owners policy in this case provided coverage for "accidental direct physical loss" to the premises and structures attached to that dwelling and "building equipment and outdoor equipment located at the described premises and used to service such premises if not insured elsewhere in this policy." (Coverage A). Furthermore, the policy provided coverage for damages to other structures not attached to the dwelling, including "structures which are connected to the dwelling by only a utility line, fence or other similar connection." (Coverage B). The term "structures" is not defined in the policy.

{¶ 20} Specifically excluded from coverage for the dwelling and other structures is "loss resulting directly or indirectly from:" "3.[f]aulty, inadequate or defective * * * e. maintenance," "4.a. wear and tear, marring, scratching or deterioration;" or "5. [t]heft of any property which is not actually part of a covered building or structure."

14.

{¶ 21} Furthermore, the policy provided coverage for damages to "personal property owned or used by any insured when the property is at the described premises," including "appliances and household furnishings in that part of the described premises regularly rented or held out for rental to others," *when* the damage is caused by "vandalism or malicious mischief" but not "theft, burglary or larceny." (Coverage C) (Emphasis added).

**First Assignment of Error**

{¶ 22} In his first assignment of error, appellant argues the trial court erred by finding the damages were excluded from coverage as ordinary wear and tear because it erred in striking the affidavit of appellant's expert who could establish the damages in this case were not the result of ordinary wear and tear.

{¶ 23} Appellant filed the affidavit of Daniel Schiefley, a real estate broker who owns rental properties and experienced many tenant turnovers. He attested that the normal cost of wear and tear for his properties did not exceed a few hundred dollars for painting, cleaning, redecorating, etc. He opined that after a 1 1/2 year lease, very little damage should have occurred which could be attributable to wear and tear.

{¶ 24} Appellee moved to strike the affidavit because it was not made on the personal knowledge and contained no supporting facts from the present case which can serve as an evidentiary foundation for an expert opinion. Schiefley did not attested that he had any knowledge of the premises at issue, the alleged damages, or the cost of the repairs.

15.

{¶ 25} Appellant fails to cite to the record where the trial court granted appellee's motion to strike this affidavit and we cannot find a judgment entry. Nonetheless, we find the affidavit did not comply with the Civ.R. 57(E) and should have been stricken.

{¶ 26} Evid.R. 702 permits a witness to testify as an expert if "[t]he witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons." Furthermore, the "[t]he witness' testimony [must be] based on reliable scientific, technical, or other specialized information." Evid.R. 703 requires the expert base his opinion on facts he perceived or evidence admitted into evidence. *Pearson v. Alpha Phi Alpha Homes, Inc.*, 9th Dist. Summit No. 29026, 2019-Ohio-960, ¶ 12.

{¶ 27} In the case before us, the affidavit at issue was not based on personal knowledge of the facts of this case and did not address matters outside the ability of the jury to understand the facts. Therefore, we find appellant's first assignment of error not well-taken.

## Second Assignment of Error

{¶ 28} In his second assignment of error, appellant argues the trial court based its decision on facts which were not admitted into evidence. The court found appellant was unfamiliar with the condition of the property after he purchased it. Appellant asserts Doughty's attestation that the property was in terrible condition when he moved into the premises was allegedly contradicted by appellant's affidavit of January 18, 2017, in which he attested that he, the Doughtys and their relative inspected the property prior to entering into the land contract. Furthermore, appellant asserts the inferences from the

16.

evidence suggest the property was in good condition because the Doughtys were willing to purchase the property and lived there for 18 months. Therefore, appellant asserts a jury question was raised as to the condition of the premises at the time appellant purchased the property.

{¶ 29} Upon examination of appellant's affidavits of November 20, 2012 and January 18, 2017, we find appellant did not make any attestations about the condition of the property at the time he purchased it. However, he did testify at his deposition that there was nothing visibly wrong with the house and fence. He only attested that at the time he purchased it, the Doughtys sought to purchase it from him on land contract and never that they walked through the home together. Richard Doughty, however, attested the premises were in terrible condition when he moved into the premises.

{¶ 30} While we agree with appellant that a reasonable inference can be made from the facts in evidence that the Doughtys abandoned their land contract because of the basement issue, this fact is not relevant to establish the relevant issues on summary judgment after the remand. The only issue is whether any of the alleged damages were caused by the Doughtys. As to that issue, conflicting evidence was presented as to the condition of the interior of the home at the time the Doughtys took possession, albeit both were self-serving statements of fact. However, appellant presented no evidence to establish which of the repairs were due to damage caused by the Doughtys rather than damages arising from ordinary wear and tear or caused by the unfinished repairs and

17.

remodeling which had been authorized by appellant as part of their agreement. Furthermore, the missing personal property, the stove knobs, would fall under the category of theft, which was not a covered loss.

{¶ 31} We also reject appellant's assertion that Auto-Owners carries the burden on this issue. To establish a claim under the insurance policy, appellant bears the burden of establishing a loss covered by the policy. Therefore, we find appellant's second assignment of error not well-taken.

### Third Assignment of Error

{¶ 32} In his third assignment of error, appellant argues that the trial court erred in granting a "blanket" summary judgment without considering each specific bill.

{¶ 33} Appellant asserts the dishwasher and stove are appliances explicitly covered by the policy. However, this assertion lacks merit because appliances are a covered loss when the loss is caused by "vandalism or malicious mischief." Appellant bears the burden of establishing the cause of the loss. In this case, there was no evidence presented of the working condition of the appliances at the time of the lease. Therefore, there was no evidence of whether the appliances were damaged by the Doughtys.

{¶ 34} Second, appellant argues he presented appellee with 43 bills in 2012 regarding the money he expended to put the property in rentable condition but the company did not discuss the bills with him or take the deposition of his wife who could provide them with the details. Again, it is appellant's burden to establish a covered loss.

{¶ 35} We find appellant failed to meet his burden to establish a covered loss because he never presented evidence of extraordinary damages caused by the tenants.

18.

Instead, he provided receipts for repairs to the property, which did not meet his burden of proof. Furthermore, Richard Doughty attested that he was permitted to make improvements to the property and was in the process of doing so when he vacated the property. Therefore, while a reasonable inference could be made that Richard Doughty removed the missing drywall and started other projects, which he left unfinished, he had permission to improve the property. The unfinished projects cannot be classified as "mischievous mischief."

{¶ 36} Without adequate proof of the damages, the trial court properly found in favor of appellee. Therefore, we find appellant's third assignment of error is not well-taken.

## Fourth Assignment of Error

{¶ 37} In his fourth assignment of error, appellant argues appellee failed to meet its duty to investigate this claim because it did not speak with his wife about the damages and it did not ask appellant about the condition of the property at the time he purchased the property.

{¶ 38} We reject this argument because appellant does not bear the burden to establish appellant's claim of a covered loss. *See Charlesgate Commons Condominium Assn. v. W. Res. Group*, 6th Dist. Lucas No. L-14-1039, 2014-Ohio-4342, ¶ 6; *Seger v. Yorkshire Ins. Co., Ltd.,* 503 S.W.3d 388, 400 (Tex.2016). We find this assignment of error not-well taken.

19.

## Fifth Assignment of Error

{¶ 39} In his fifth assignment of error, appellant argues the trial court erred in finding the removal of the fence benefited appellant because Richard Doughty attested it was a hazard. Appellant asserts that Auto-Owners made two different reasons for denying coverage for the fence before the final reason that it was removed by the tenant because it was a hazard. Appellant asserts that the conclusion that the property was improved is an opinion and cannot be the basis for summary judgment.

{¶ 40} Under the contract, the fence was not a covered structure, but was personal property. Theft of personal property was specifically excluded. Furthermore, the trial court did not find removal of the fence was necessary and beneficial to the property. Whether or not the removal of the fence was a breach of their agreement is an irrelevant issue to this case. The trial court did find that removal of the fence cannot be classified as damage caused by "mischievous mischief" when Doughty testified he removed the fence pursuant to their agreement because he believed it was in a state of disrepair and dangerous. Therefore, we find appellant's fifth assignment of error not well-taken.

## Sixth Assignment of Error

{¶ 41} In his sixth assignment of error, appellant argues the trial court erred in finding the removal of the drywall from the garage and vacating the premises before completing the repair benefited appellant. Again, we find appellant has misinterpreted the trial court's finding. The trial court did not find removal of the drywall was a benefit, it found the removal was authorized by appellant as part of the lease agreement with Doughty. The fact that the Doughtys vacated the premises leaving some of the repairs

20.

undone may represent a breach of contract, but does not establish accidental direct loss to the premises. Therefore, we find appellant's sixth assignment of error not well-taken.

## Seventh Assignment of Error

{¶ 42} In his seventh assignment of error, appellant argues there was no evidence in the record to support the trial court's finding that appellant authorize the repairs to the property. We disagree. Richard Doughty attested to the agreement between himself and appellant. Appellant did not present any evidence to the contrary. Therefore, we find appellant's seventh assignment of error not well-taken.

## Eight Assignment of Error

{¶ 43} In his eighth assignment of error, appellant argues that after the summary judgment was reversed on appeal the first time, appellee could not file a second motion for summary judgment based on evidence (Richard Doughty's affidavit) obtained after the remand and to assert a new basis for denying coverage. Secondly, appellant argues that the Richard Doughty affidavit was internally inconsistent and conflicted with evidence that he rented the house without any indication the house had pre-existing damage.

{¶ 44} We reject this argument as well. When summary judgment was reversed and the case was remanded to the trial court, the parties were returned to the same position as if no motion for summary judgment had been filed. They were free to continue to litigate their case and gather evidence to support their case. As to the reliability of the affidavit, appellant did not make objections to the affidavit and did not present any evidence to contradict the facts to which Doughty attested. Instead, appellant

21.

asserts the court should infer that because the Doughty agreed to rent the property and live there for 18 months, there could not have been any damage. That inference, however, cannot be made when Doughty also attested that appellant agreed to allow Doughty to make repairs to the premises. Therefore, we find appellant's eighth assignment of error not well-taken.

## Ninth Assignment of Error

{¶ 45} In his ninth assignment of error, appellant argues that the trial court was biased because it issued a trial order on March 7, 2018, which required appellant to obtain counsel and prepare for a jury trial while the second motion for summary judgment was pending. Appellant contends that the trial court erred in not providing appellant with the opportunity for a hearing before ruling on the motions for summary judgment.

{¶ 46} We find this assignment of error not well-taken. Appellant never sought to have the judge recuse himself and never sought relief from the Supreme Court of Ohio to have the judge disqualified. Therefore, appellant has waived any right to challenge that the judge was biased.

{¶ 47} In addition, appellant's claims are unfounded. After the award of partial summary judgment was affirmed on appeal in 2015, *Murray v. Auto-Owners Ins. Co.*, 2015-Ohio-3295, 40 N.E.3d 679 (6th Dist.), appellee again moved for summary judgment in September 2016. While the motion was pending, due in part to numerous evidentiary disputes, on March 7, 2018, the court scheduled the final trial conference for September 20, 2018 in preparation for trial. We find the order was a typical procedural order.

22.

Finally, the court did not require that appellant seek retained counsel. Appellant elected to represent himself in this matter. Therefore, we find appellant's ninth assignment of error not well-taken.

{¶ 48} Having found the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Christine E. Mayle, P.J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.